**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 25-11478
Non-Argument Calendar
_____

WILL TWIGG,

*Plaintiff-Appellant,*

*versus*

PALM BEACH COUNTY SHERIFF'S OFFICE,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:23-cv-81352-DMM

_____

Before ROSENBAUM, GRANT, and BRASHER, Circuit Judges.

PER CURIAM:

Will Twigg appeals from the district court's grant of summary judgment in favor of his employer, the Palm Beach County

Sheriff's Office. Twigg, who suffers from post-traumatic stress disorder, requested and was denied an accommodation for his disability. After the PBSO terminated him, Twigg sued, alleging violations of the Americans with Disabilities Act, the Family and Medical Leave Act, and the Uniformed Services Employment and Reemployment Rights Act. The district court granted the PBSO summary judgment. It held that Twigg was not a qualified individual under the ADA, had no right to reinstatement under the FMLA, and failed to prove discrimination under USERRA. We affirm.

## I.

Before he was terminated, Twigg was a Corrections Deputy Sheriff for the PBSO. According to the job description, the Corrections Deputy Sheriff "protect[s] life and property," "prevent[s] and suppress[es] crime," "apprehend[s] violators of the law," "preserve[s] the public order," and "provide[s] care, custody, control, and supervision of inmates" within correctional facilities. Under Florida law, law enforcement officers must maintain an active certification with the Florida Department of Law Enforcement to be, and remain, employed. *See* FLA. STAT. §§ 943.13, 943.135.

During his employment with the PBSO, Twigg was also a member of the armed forces. As part of his service, he was required to periodically take leave. Prior to his scheduled return from service, Twigg took FMLA leave due to "medical/health problems." He also informed the PBSO that he wanted to move into an "administrative position" or remain a Deputy Sheriff with "strictly administrative duties."

The PBSO informed Twigg that because his FDLE certification had lapsed, he could not remain in his position as Deputy Sheriff. It also explained that, without knowing what Twigg's disability was, it could not provide him with a new position. The PBSO gave Twigg ten days to submit medical documentation. It warned him that failure to comply could result in termination.

Twigg provided a note from his licensed clinical social worker. The note stated that Twigg suffered from PTSD related to combat trauma. It explained that Twigg's "triggers" included, but were not limited to, "sudden loud noises, feeling trapped or unable to leave, crowded environments, sudden or significant changes, conflict, and prolonged high stress." When Twigg experienced an episode, it was difficult for him to focus and engage with others. The social worker stated that Twigg "requires flexible break and leave options to let him exit a triggering situation and calm himself down." The social worker also reviewed the Corrections Deputy Sheriff job description and concluded that Twigg was unable to work in a position requiring him to regularly respond to violent or emergency situations. However, she believed that he could work in an "administrative or clerical setting" if given "reasonable accommodations."

The same day Twigg provided his note, PBSO Chief Human Resources Officer Karen Thomas informed him that the PBSO would terminate his employment. Based on the note Twigg provided, Thomas concluded that Twigg could not remain in the Cor-

rections Sheriff Officer role with or without a reasonable accommodation. Because the administrative or clerical positions Twigg identified still required him to be a Deputy Sheriff, he could not perform the "essential functions" of those roles either. Thomas also concluded that Twigg's restrictions precluded him from being placed in any vacant position. Finally, she observed that Twigg had not addressed his certification issues and was still inactive.

Thomas sent a memorandum to Sheriff Ric Bradshaw recommending Twigg for termination. Bradshaw approved Twigg's termination.

Twigg sued the PBSO, alleging violations of the ADA, FMLA, USERRA, and the Florida Civil Rights Act. He argued that the PBSO fired him because of his disability and military service in violation of the ADA and USERRA. He also contended that the PBSO violated the FMLA by failing to reinstate him after he took leave. The district court dismissed the FCRA claim but permitted the others to proceed to summary judgment.

The court entered a pretrial scheduling order, setting the discovery deadline for June 13, 2024. That day, Twigg filed a motion to modify the scheduling order, arguing that he needed more time to complete discovery. The district court denied his motion, holding that Twigg displayed a lack of diligence by failing to conduct any discovery in the interim.

The district court also granted the PBSO's motion for a protective order prohibiting Twigg from deposing Sheriff Bradshaw.

The district court concluded that Bradshaw's testimony was unnecessary because Twigg had not established that Bradshaw was personally involved in Twigg's firing. The court explained that Twigg had merely established that Bradshaw received Thomas's memorandum and subsequently approved Twigg's termination.

After depositions, the PBSO moved for summary judgment on Twigg's ADA, FMLA, and USERRA claims. The district court granted the motion. First, the court found that Twigg was not a qualified individual as required under the ADA because he failed to show that he could perform the "essential functions" of his job with or without a reasonable accommodation. The court determined that the Corrections Deputy Sheriff position requires responding to potentially dangerous situations, which Twigg's PTSD prevented him from doing. The court also rejected Twigg's argument that he could be placed into an administrative position because he presented no evidence of any vacant positions for which he was qualified. Second, the court rejected Twigg's FMLA claim because Twigg had no right to be restored to a position where he could not perform the essential functions. Third and finally, the court rejected Twigg's USERRA claim because he presented no evidence of discrimination based on his military status.

Twigg filed a motion under Federal Rule of Civil Procedure 59(e) to alter or amend the judgment. The district court denied Twigg's motion because most of his arguments were ones the court rejected in its summary judgment order. The district court also observed that Twigg was attempting to advance an alternative

theory of USERRA liability. The court held that Twigg's complaint did not plead this alternative theory. As a result, Twigg was foreclosed from raising it at summary judgment.

Twigg timely appealed.

## II.

We review a district court's grant of summary judgment *de novo*. *Beasley v. O'Reilly Auto Parts*, 69 F.4th 744, 753 (11th Cir. 2023). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

We review for abuse of discretion the denial of a Rule 59 motion, *Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1267 (11th Cir. 1998), the district court's decision to enforce its scheduling order, *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998), and the district court's entry of a protective order, *Pres. Endangered Areas of Cobb's Hist., Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1245 (11th Cir. 1996). "A district court abuses its discretion if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous." *F.T.C. v. Nat'l Urological Grp., Inc.*, 785 F.3d 477, 481 (11th Cir. 2015) (citation modified).

### III.

Twigg raises four arguments on appeal: (1) that the district court erred in granting summary judgment on his three claims; (2) that the district court abused its discretion in failing to amend its judgment; (3) that the district court abused its discretion by declining to modify its scheduling order; and (4) that the district court abused its discretion by granting the PBSO's motion for a protective order. We address each issue in turn.

### A.

First, the district court properly granted summary judgment on Twigg's ADA, FMLA, and USERRA claims.

Starting with the ADA, the plaintiff has the burden of proving a prima facie case of disability discrimination by a preponderance of the evidence. *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1226 (11th Cir. 1999). To prove a prima facie case under the ADA, the plaintiff must demonstrate that he (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of his disability. *Id.* The second element is at issue here.

A "qualified individual" is someone with a disability who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1256 (11th Cir. 2007). An accommodation is

"reasonable" under the ADA only if it enables the employee to per-form the essential functions of the job. *Holly*, 492 F.3d at 1256. In determining whether a function is essential, "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description be-fore advertising or interviewing applicants for the job, this descrip-tion shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). The ADA does not require the employer to eliminate an essential function of the plaintiff's job, so Twigg is not covered under the ADA if he cannot perform an essential func-tion even with an accommodation. *Holly*, 492 F.3d at 1256.

There is no reasonable dispute that an essential function of the Corrections Deputy Sheriff position is responding to violent or emergency situations and occasionally using force to maintain or-der. The position description lists emergency response as an "es-sential job duty." Doc. 30-2 at 2, 4. It further lists as "essential job responsibilities" the preservation of order, the protection of life, and the suppression of crime within correctional facilities. *Id.* at 1. Both Thomas and Twigg testified during their depositions that emergency response is an essential part of being a Corrections Dep-uty Sheriff.

Twigg could not perform these essential functions even with an accommodation. The note from Twigg's social worker states that Twigg cannot regularly respond to violent or emer-gency situations. Twigg himself conceded that his disability pre-vents him from responding to emergencies. Instead, he argues that

he could have remained in the Corrections Deputy Sheriff position in a purely administrative capacity, or could have been reclassified to a civilian position. His argument fails for three reasons.

First, the "administrative" positions Twigg suggested he be placed into required him to be able to perform the same essential functions as a Deputy Sheriff. Thomas testified at her deposition that the "administrative" positions Twigg requested still required that he be a Deputy Sheriff. As a result, even if Twigg were assigned to a clerical position, he would still have to respond to emergencies and maintain order if needed. Thomas further testified that several of the alternative positions Twigg requested—including a "Military Liaison" and purely administrative Deputy Sheriff role—did not exist. And the PBSO was under no obligation to eliminate essential functions from a role to accommodate Twigg or to create new positions to suit him. *Holly*, 492 F.3d at 1256; *Terrell v. USAir*, 132 F.3d 621, 626 (11th Cir. 1998). Twigg responds by emphasizing his affidavit, in which he alleges that there exist administrative positions for which he was qualified. But conclusory, self-serving statements in an affidavit are insufficient to survive summary judgment. *See Leigh v. Warner Bros.*, 212 F.3d 1210, 1217 (11th Cir. 2000).

Second, Twigg never identified a specific vacant position for which he was qualified. "Reassignment to another position is a required accommodation only if there is a vacant position available for which the employee is otherwise qualified." *Willis v. Conopco, Inc.*, 108 F.3d 282, 284 (11th Cir. 1997). Although he argues that he

would have accepted "any administrative or clerical position," Appellant Br. at 32, he does not present evidence that any such position existed at the time of his termination. *See Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1258 n.5 (11th Cir. 2001) (testimony consisting of speculation regarding the existence of vacant positions "falls far short" of establishing the existence of a "specific reasonable accommodation"). To the contrary, Thomas testified that she could not find any vacant positions that Twigg was qualified for in light of his restrictions. Twigg has therefore failed to identify a reasonable accommodation.

Third, Twigg ignores the fact that he failed to obtain his FDLE certification. It is undisputed that, at the time of his termination, Twigg had not become certified as required under Florida law, despite receiving prior warnings. According to Twigg's position description, certification was one of his job requirements. Because an officer who fails to maintain FDLE certification cannot remain employed, it is an essential function. *See* 42 U.S.C. § 12111(8).

Twigg's arguments to the contrary are unavailing. His contention that his certification could have been reinstated is conclusory and unsupported by record evidence. *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924–25 (11th Cir. 2018) (explaining that we have "consistently held that conclusory allegations without specific supporting facts have no probative value" at summary judgment (citation modified)). His argument that the PBSO should have assisted him in becoming certified likewise fails, as it was Twigg's duty to

ensure up-to-date certification, and the PBSO warned him that his certification had lapsed three months before he was fired. Thus, the record reflects that Twigg is not a qualified individual under the ADA.

Because Twigg is not a qualified individual, he failed to establish a prima facie case under the ADA. He is therefore not entitled to "any helpful evidentiary burdens or presumptions" and must produce enough evidence to avoid summary judgment on his ADA claim. *Ismael v. Roundtree*, 161 F.4th 752, 765 (11th Cir. 2025). Under these circumstances, a plaintiff may avoid summary judgment if he has presented a "convincing mosaic" of circumstantial evidence that permits an inference of intentional discrimination. *Akridge v. Alfa Ins. Cos.*, 93 F.4th 1181, 1197 (11th Cir. 2024) (citation modified). A plaintiff's mosaic may be made up of, among other things, "(1) suspicious timing, ambiguous statements, and other bits and pieces from which an inference of discriminatory intent might be drawn; (2) systemically better treatment of similarly situated employees; and (3) evidence that the employer's justification is pretextual." *Id.* at 1198 (citation modified).

As evidence of a convincing mosaic, Twigg points to the PBSO's decision to terminate him the day he submitted his social worker's note. But this timing was neither suspicious nor evidence of pretext. The PBSO established that, long before Twigg submitted his note, it repeatedly warned him that failure to provide the necessary documentation could result in his termination. Additionally, Twigg's note proved that he could not perform the essential

functions of his position. The PBSO's subsequent decision to terminate him is hardly "suspicious timing." Appellant Br. at 36. At bottom, the evidence suggests that the PBSO could not employ Twigg given both his restrictions and lack of certification. Twigg failed to provide evidence that would allow a jury to infer intentional disability discrimination, and the PBSO was entitled to a grant of summary judgment on the ADA claim. *See Akridge*, 93 F.4th at 1198–99.

Twigg's FMLA claim fares no better. He argues that the PBSO violated the FMLA by failing to reinstate him after he used FMLA leave. The FMLA permits eligible employees to take twelve weeks of unpaid leave each year for certain purposes, including in response to a "serious health condition." 29 U.S.C. § 2612(a)(1)(D). An employee returning from FMLA leave is entitled "to be restored by the employer to the position of employment held by the employee when the leave commenced" or to an equivalent position. 29 U.S.C. § 2614(a)(1). An employee has no right, however, to be reinstated or restored to another position if he cannot perform the essential functions of his job. *Jones v. Gulf Coast Health Care of Del., LLC*, 854 F.3d 1261, 1268 (11th Cir. 2017) (citing 29 C.F.R. § 825.216(c)).

Here, because Twigg's disability left him unable to perform the essential functions of his position, he had no right to reinstatement under the FMLA. Additionally, Twigg's lack of certification would have resulted in his termination anyway. *Strickland v. Water Works & Sewer Bd. of Birmingham*, 239 F.3d 1199, 1208 (11th Cir.

2001) ("An employer can deny the right to reinstatement, however, if it can demonstrate that it would have discharged the employee had he not been on FMLA leave."). Twigg's sole defense—that the temporal proximity between his FMLA leave and termination is suspicious—fails for the reasons previously discussed. Because Twigg has provided no evidence that the PBSO refused to reinstate him because of his FMLA leave, the PBSO was entitled to summary judgment on this claim. *Id.*

Twigg's third and final claim—that the PBSO discriminated against his military status in violation of USERRA—also fails. Under USERRA, servicemembers shall not be denied "initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer" based on that service. 38 U.S.C. § 4311(a). An employee proves a violation by establishing that his service was a "motivating factor" in the employer's action, unless the employer can prove that the action would have been taken in the absence of the employee's service. *Thomas v. Broward Cnty. Sheriff's Off.*, 71 F.4th 1305, 1312 (11th Cir. 2023) (quoting 38 U.S.C. § 4311(c)(1)). Evidence of discriminatory motivation includes disparate treatment of similar employees, expressions of hostility towards servicemembers, and evidence of pretext by the employer. *See id.*

Twigg presented no evidence that his termination was motivated by his military service. Twigg served in the military throughout his employment with the PBSO and took leave several times without issue. It was only after his certification lapsed and he

became unable to perform the essential functions of his position that he was terminated. Neither of these justifications evinces "disdain for his military service." Appellant Br. at 41.

Based on the record, there is no genuine dispute that Twigg was not a qualified individual under the ADA, had no right to reinstatement under the FMLA, and provided no evidence of discrimination under USERRA. Accordingly, the district court's grant of summary judgment for the PBSO was proper.

*B.*

Twigg's remaining arguments are that the district court should have amended its summary judgment order, modified its scheduling order to permit more time for discovery, and not granted the PBSO's protective order. We disagree.

First, the district court did not abuse its discretion in denying Twigg's Rule 59(e) motion. In his motion, Twigg argued that the district court improperly weighed evidence, granted summary judgment on grounds not in the PBSO's motion, and imposed a heightened summary judgment burden on him. He also argued that his complaint provided notice of his claims, and that the court should have permitted him to amend his complaint rather than grant the PBSO summary judgment.

The only grounds for granting a Rule 59 motion are "newly-discovered evidence or manifest errors of law or fact." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (citation modified). A Rule 59 motion cannot be used to relitigate old matters or raise

arguments that could have been raised before summary judgment. *Id.*

Twigg cannot show that the district court abused its discretion by denying his motion. Twigg's motion did not rely on any newly discovered evidence. As the court observed, "the bulk of [Twigg's] arguments" were ones it had already rejected in its summary judgment order. Doc. 76 at 2. Nor could Twigg show a manifest error of law or fact. Contrary to his arguments, the court held Twigg to the appropriate standard for each of his three claims and correctly rejected each. It did not base its decision on any grounds not raised in the motion for summary judgment.

Twigg's main argument is that he should have been permitted to rely on different provisions of USERRA than those identified in his complaint. But as the court held, Twigg did not allege violations of these provisions in his complaint. The first time he referenced them was in his motion opposing summary judgment. A plaintiff may not amend his complaint at the summary judgment stage. *Miccosukee Tribe of Indians of Fla. v. United States*, 716 F.3d 535, 559 (11th Cir. 2013). The district court therefore did not abuse its discretion in denying Twigg's Rule 59(e) motion.

Twigg also contends that the district court should have permitted retroactive amendment under Rule 60(b) for "mistake, inadvertence, surprise, or excusable neglect." FED. R. CIV. P. 60(b). But Twigg did not show that his failure to plead violations of an entirely separate provision of USERRA fell into any of these narrow categories. He also had months to amend his complaint and

failed to do so. Twigg does not satisfy the "high standard" Rule 60(b) sets for granting post-judgment relief. *Zakrzewski v. McDonough*, 490 F.3d 1264, 1267 (11th Cir. 2007).

Second, Twigg asserts that the district court abused its discretion by denying his motion to modify the scheduling order. He argues that he needed more time for discovery due to his active military service. Even assuming so, the court properly denied his motion. A scheduling order may be modified only for good cause. FED. R. CIV. P. 16(b)(4). "This good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *Sosa*, 133 F.3d at 1418 (citation modified). If a party was not diligent, the good cause inquiry ends. *Id.* (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)).

Twigg was not diligent in pursuing his claim. He waited until the day of the discovery deadline to file his motion for an extension. Between the day he filed his complaint and the discovery deadline, he had eight months to conduct discovery. In that time, he did not serve any written discovery requests or schedule any depositions. The district court did not abuse its discretion in concluding that Twigg's lack of diligence foreclosed his motion for an extension.

Third and finally, Twigg argues that the district court abused its discretion in granting the PBSO's protective order. He avers that Sheriff Bradshaw was the ultimate decisionmaker regarding his termination and should have been deposed.

A court may, "for good cause," issue an order protecting a party from "annoyance, embarrassment, oppression, or undue burden or expense," including in matters of discovery. FED. R. CIV. P. 26(c). District courts must balance the interests of the parties in considering the order. *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987).

Here, the district court correctly found that Bradshaw was minimally involved in Twigg's termination. Twigg's evidence of Bradshaw's involvement was only that he received and signed Thomas's memorandum recommending Twigg's termination. Twigg himself testified that Bradshaw did not communicate with him regarding his termination or request for accommodation. Additionally, Twigg was able to depose Thomas, who drafted the memorandum and was intimately involved in the decision to terminate him. Considering Bradshaw's limited involvement, as well as his high-ranking position as Sheriff of the PBSO, the district court did not abuse its discretion in granting the protective order.

**IV.**

**AFFIRMED.**